Our next case is Managed Care Advisory Group v. CIGNA. This is a case of Correct. This is an unusual history with an unusual length. I want to spend a few minutes discussing the arguments that were made here today by the Reviewers' Council and by CIGNA as well. With regard to the reviewers, their number one point was that this is discovered. The record does not support that. The arbitrator specifically rejected the idea that discovery could be had on the third parties and said that instead it would be done at a hearing. The District Court agreed with the arbitrator, Magistrate O'Sullivan, and Judge Moreno affirmed that. That's three different people who said this is not discovery. The only one saying that it's discovery are the reviewers. Reviewers also state that this would be extremely burdensome for them. The arbitrator took that into account and that the arbitrator is going to stay here in Miami and the reviewers would appear in their home districts. There's no burden associated with that other than to call and come and answer questions and discuss the policies and procedures and how they adjudicate claims for which they were paid voluntarily. For which they were paid millions and millions of dollars. There's no burden associated with it. In terms of personal jurisdiction, it's nationwide service. We believe that their interpretation of the FAA is unduly restrictive. The FAA says that it's service under Rule 45. It did not point a specific time period in the 1940s or when the FAA was first instituted. Regardless, at the time we served it, it was pursuant to FRCP 45 and that's the appropriate standard. With regards to Cigna's claims, the arguments that Cigna made today are the same arguments that Cigna made to the district court. It's the same arguments that were rejected by both the magistrate and by Judge Moreno. There's nothing new associated with it. And while we disagree with their characterizations, those issues are being dealt, at least currently right now, in front of the arbitrator. It's our position that this arbitration was very narrow and the only issue is the compensability of Category 2 claims. Not what MCAG did with money that was paid and how it dispersed that money. But regardless, that's what the arbitrator is doing. What Cigna wants to do is subject Managed Care Advisory Group to two competing accountings. There's nothing different about what they want. They want to know where the money went and how it was spent. It's our position that it's irrelevant anyways. But the district court correctly concluded that the arbitrator is handling it for right now and that would be sufficient for what they want to do. The accounting that's being handled by the arbitrator, is that only with respect to the Category 2 claims? Correct. Regardless, Cigna did not meet its burden in the underlying action. All of the comments that are made today, what you have in front of the record, and indeed the additional information that Cigna tried to supplement that this court struck, all of that was in front of Magistrate O'Sullivan and in front of Judge Moreno. And they simply rejected it. There's nothing unusual about it. We understand that they're upset about it, but that doesn't mean that it's wrong. And they provide no law or no contrary facts that would indicate otherwise. Unless Your Honor is having any... Cigna is entitled to ask for an accounting on the Class 1 claim. On the Category A and Category 1 funds? Why shouldn't they be able to ask for that accounting now? I don't think they would be entitled to ever ask for that accounting in the first place. I don't think they have standing to ask for the accounting. Their role was to pay money, and they paid the money. What happened after that money? What you did with it is not their concern, correct? What they did... You paid zero to the claimants, not their concern. That's your position. Correct. It would be the claimants. Now, the claimants, if they have an issue with it, they can certainly come after... How would they know? How would they know whether... Has there been any information provided that you gave notice to any of these claimants that the monies were received? Part of this record, it's not there. But outside of the record, there was testimony at hearing that interested parties were given information, stakeholders were informed on a regular basis, medical societies, steering committees, that sort of thing. Is there any information in the record that a penny was paid to any of these claimants? Yes. In the record, there is information of that? In the record... Cygnus says you all are a bunch of crooks. Yes. But you've taken this money that should have been paid to claimants. Yes. You say you're not entitled to see this. My question is, is there anything that the district court had in the record that would refute their allegation that you haven't paid any of the money? Yes. I mean, there was... We presented... There's been evidence presented in, I think, both proceedings that as to Category A and Category 1, MCAG took its service fee, which it is entitled to do, and then paid the rest of the money to its clients. And how much does the record indicate that you... I'm sorry. How much does the record indicate was paid? I think it's approximately $7.5 million, something in that range. Of how much? Of... I think that there was about $11 million paid in Category A and Category 1 claims, and $3.5 million of that, I believe, was kept by MCAG and its partners, and the additional amounts were dispersed to the clients. As it relates to Category 2 claims, the monies have not been dispersed to the clients. And the reason for that is that the... And I'm trying to be careful to stay within the record, although the record is quite... I'm just concerned about the numbers and what you admit and what you don't admit. Understood. How much of the Category 2 claim monies do you admit or receive? Approximately $14.5 million. And of that amount, how much was paid? According to the record. None. Zero. None thus far. Correct. So the total of $25.5 million, $3.5 million has been dispersed to clients. Correct. Correct. And to that point, Your Honor, it is MCAG's position. The counsel has reminded me that there was no formal evidence. It was there were questions that were asked, but there were no... In the underlying proceeding, there were not documents that were provided with this information. In the arbitration, there were plenty of documents. Although not to the satisfaction of the arbitrators currently undertaking... Your statement to this court is that of the amounts of monies that were paid, about 14% have been distributed to claims. Thus far. The reason I say thus far is that according to the record, there are still, I believe, four or four and a half million as of the time of these particular proceedings that was being retained pending the ultimate outcome of the arbitration, at which point MCAG would make decisions about how to disperse the funds that are remaining. You made an argument regarding standing. Have you made that argument to the district court? In terms of Cigna's response... Cigna's standing, right, to raise these issues. We have argued that Cigna's arguments regarding there was a breach of fiduciary duty, that there was no case law that supports it. So they don't have standing to make the argument. Whether we use those exact words that they have no standing, I could not say, but I can say that we forcefully disagree with them that they have any standing. In the arbitration, we have most certainly argued that they have no standing to make the arguments. That is that once they pay the money, particularly in the private arbitration, that what managed care does with that money, they have no standing as to argue it should be paid in a certain manner or not. And there is an important point here, which is Cigna comes up here and pretends that they have no idea who MCAG is. They know who MCAG is. They knew it in 2005 when MCAG submitted the majority of the claims on behalf of the class members. They knew it when they entered into this private arbitration agreement. They knew exactly who MCAG was. They knew exactly what MCAG did. To now argue some 13 years later that, surprise, MCAG wants to be paid its service fees is puzzling to us because they know exactly who MCAG was, who they're representing, and what they were advocating. Well, again, I want to get back to this question I asked you earlier. If this additional money that's available is paid, all of it's paid, and you don't hold anything back, the most that you could pay these claimants would be about 32% according to my math. Understood. You're saying who we are. You're a service company that would be retaining 68% of settlement funds. That's not entirely accurate. And, again, I'm outside the record, so I want to be, if I may be permitted to respond, because there was evidence in the arbitration, and the arbitrator has made rulings already as to how those funds were distributed and what sources that he believes were appropriate and not appropriate. I'm constrained. I'm constrained by what's in the record unless your honor wants to hear more. But this is, again, the point where this sort of illustrates our point, which is the arbitration is ongoing. The arbitrator is dealing with a multitude of issues, some of which we agree with, some of which Cigna agrees with, some of which we both disagree. We're here to get a summons enforced in order to get to a final decision some 13 years after this arbitration started. That's all we're trying to do, nothing more and nothing less. And while these arguments may sound interesting to those, this case has a long and tortured history. And at some point, either the case will settle and resolve, or perhaps we'll be back in front of Judge Moreno with either side asking that it be challenged. But that's when the case is entirely over. And that's all the more reason that the summons should be enforced, so that we can move on with the case. Because what you're dealing right now with is a limited record on these particular issues. And while Cigna has raised a whole host, they've raised it in front of the district court as well, and the district court has concluded that let the arbitrator do what the arbitrator is going to do, and maybe I'll see you back here, and maybe I won't. But you've all chosen to be in arbitration. That's where you need to be. If there are no further questions, I appreciate your time. Thank you. Thank you. Counsel for Mkaig represents that and argues that the reviewers have waived the argument with respect to costs, and I want to address that first because the record is very, very clear that that's not the case. At Joint Appendix 1033, there's the declaration of Michael O'Connor in opposition to the motion to enforce the arbitral summonses, the detail, the work that would go into EPIC, and connection with these costs. After reviewing the requested documents, it provides great detail about what would be necessary, the hourly breakdown, and the total cost. There are arguments that were raised in the briefing before the district court in the opposition to the motion to enforce at Joint Appendix 882 and 83. It was raised again in connection with the objections to the magistrate's ruling, Joint Appendix 1373, and then on reply at Joint Appendix 1637. There is simply no question that these issues were raised, preserved, and specific evidence in the record exists as to the costs that EPIC is talking about. The court asked a question about appellate jurisdiction with respect to the reviewers, and the response from Mkaig was the argument that the reviewers have voluntarily participated in the arbitration. Well, the reviewers are vendors that were hired to provide services. It's what they do. We dispute the characterization of the involvement in the arbitration, but it's frankly irrelevant to the question of appellate jurisdiction. What the reviewers did or didn't do in the arbitration has nothing to do with the finality analysis, which is a functional test that the court looks at. Is there anything left to do in the district court? Now, there's nothing left to do in the closed MDL in which Mkaig incorrectly and improperly filed their motion to enforce the summons. MDL is closed. Judge Moreno ruled on all pending motions, and for good measure in his omnibus order said any and all other pending motions are denied as moot. There is nothing left to do in the MDL. Now, had they properly filed a separate action, then it would be even clearer. It's a stand-alone independent proceeding where the parties seeking to enforce the summons brings before the proper district court that has power to hear that motion, and then once the motion to enforce the summons is ruled on, there's nothing left. That's why this court, in the parallel context of foreign subpoenas and administrative subpoenas, found those cases to produce final rulings that are subject to appeal. So, too, with Section 7. The only circuits that have addressed Section 7 specifically, similarly, have found that those are final and appealable rulings. So I think there's no question there of this court's appellate jurisdiction. There was a question about burden, and counsel for MCAG, I think, conflates the analysis of the burden of compliance with what the proper focus is, is the district court's power to exercise its authority over the people, over the reviewers in the first instance. It shouldn't be forgotten that the reviewers have had to come to the Southern District of Florida from Pennsylvania and Oregon and California to fight the arbitral summons. Having an appearance by video doesn't solve that. That's the burden on the first instance, and that's what FRCP 45 protects federal court litigants against by allowing litigants or non-parties who are subpoenaed to appear in their local jurisdiction to fight summonses. There was an argument about the appearance to have an arbitrator appointed under Section 5, and that somehow creates jurisdiction, or that it's inconsistent, and it's not. First of all, the dispute here with respect to the reviewers is between MCAG and the reviewers, and those are the parties that the court has to focus on when assessing subject matter jurisdiction over the motion to enforce summonses. There was likely a separate jurisdictional basis as between MCAG and CIGNA with respect to Section 5. I don't know if that was argued or not, but that doesn't carry over to this different dispute between different parties. So the Section 5 motion to appoint the arbitrator is not relevant. And then there were questions about the closed MDL, and I think it's important to note that, again, Judge Moreno didn't have anything to do with commencing the arbitration. He clearly became aware of it when there was the motion to appoint the arbitrator, but he closed the MDL after that, knowing that there was this arbitration out there. So if there's any question about the effect of the closed MDL in light of the arbitration, I think that answers it. For those reasons and the reasons in our brief, I would ask that the order of the Dish Report be reversed to the reviewers. Thank you. May it please the Court. First, I think there's some statements about what's in the record that should be corrected. Counsel said that all issues are being dealt with by the arbitrator that were before the judge in the motion of force. That's incorrect. MCAG's position, in fact, in their briefs before this Court, is that the arbitrator has no authority to look at their prior misconduct. What the arbitrator is looking at is whether MCAG, based on its acts, can continue to represent class members in the arbitration, period. That's what the arbitrator is looking at. And by the way, there has been no accounting. This Court's issued a ruling in Zaki. It knows exactly what an accounting is. We have gotten no contemporaneous records from MCAG about exactly where this money went. Counsel also said that all of the facts were in front of Magistrate O'Sullivan and Judge Marino that this Court struck in the supplemental authority. That's not correct. The supplemental authority that this Court struck were the contents of a hearing that took place after both Judge O'Sullivan and Judge Marino ruled. There's still ample evidence in the record that there was a misuse of funds, but that statement is incorrect. As to the question asked about whether class members know what is going on, I repeat, what was on MCAG's website, they were struggling to get money from Cigna when we had already paid $22 million, but there is no evidence in this record that a class member has been given notice that Cigna paid $25 million, much less that MCAG misused the $25 million. Why does Cigna have standing to raise this issue? I'm sorry? Why does Cigna have standing to raise this issue on behalf of the class members? Well, we're not raising it on behalf of the class members. Cigna is a party to a settlement agreement. That settlement agreement was a long-involved, 100-page settlement agreement insisted upon by class counsel who did represent the class members. And in that agreement, Cigna agreed to over $400 million of non-monetary and monetary benefits. Why? These are doctors in our network. These are essentially our customers. We needed to get those benefits to those doctors to ameliorate any problem that was resulted from the claim that we hadn't paid claims adequately. There is no one else who has standing. Certainly MCAG doesn't have standing. They weren't a party to the settlement agreement. We were a party to the settlement agreement. And that bargain that we struck that those benefits would go to those doctors, only a district court can enforce that bargain. And we bargained for that hard because those doctors are in our network and we want to make sure they got the benefit of the bargain. And you'll notice we haven't asked for any of the money back. All Cigna has asked for is that the money gets to the class members that it was supposed to get to under the settlement agreement. Counsel also said there were no documents in the record. That, again, is not correct. What was presented to Judge Marino were MCAG self-created charts where they said they took the substantial majority of this money. We still don't have the actual records, but those were their admissions in charts in front of the judge. Now, the other thing I think is important to note is we cited a number of claims processor cases to the court, starting with the Jack Fawcett case all the way through 2018. And in those claims processor cases, those courts stood for the proposition that all of us learned in law school. In a class action, you can't have a class action where you can't solicit the class unless it's approved by the court. In a class action, you can't enter into a contingent fee arrangement with class members unless it's approved by the court. Does it make a difference that it's a third party as opposed to an attorney? No, they are a holder of class funds. If you look at the arbitration agreement itself, it says the arbitrator is deciding the compensability of Category 2 claims under the settlement agreement, under the terms of the settlement agreement. These are class funds. There's no mistake about that. And certainly you can't take class funds without the approval of the court. So, Your Honor, we would be in the ironic position if the court does not enforce the settlement agreement where a third party can enforce the settlement agreement in a discovery matter, but a party to the arbitration agreement can't force it to protect the class action funds. Thank you.